UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RHONDA M. S., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:22-CV-200-CDL |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff seeks judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c)(1), (2). For the reasons set forth below, the Court **reverses** the Commissioner's decision denying benefits and **remands** the case for further proceedings.

**I.  Standard of Review**

The Social Security Act (Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citing *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, --- U.S. ---, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## II.   Procedural History

The plaintiff filed a Title II application for disability insurance and a Title XVI application for supplemental security income on February 8, 2019. The plaintiff alleges she is disabled due to a combination of physical and mental impairments, including low vision, hearing voices, "seeing things," major depressive disorder, post-traumatic stress disorder (PTSD), body aches, arthritis, and "can't walk." (*See* R. 140-141). She was 56 years old on the alleged onset date of September 12, 2018. (R. 140). Prior to the alleged onset date,

the plaintiff worked as a cashier/checker, security guard, and production assembler. (*See* R. 29-30).

The Commissioner denied the plaintiff's application on initial review and on reconsideration. The plaintiff then requested a hearing before an Administrative Law Judge (ALJ). The ALJ held a telephonic hearing on April 21, 2020 and a supplemental hearing by telephone on July 16, 2020. The ALJ found the plaintiff not disabled in a decision dated October 13, 2020. The plaintiff sought review by the Appeals Council, which granted the plaintiff's request for review and remanded the case to the same ALJ for further proceedings. (Doc. 230-231).[1]

On remand, the ALJ held a third telephonic hearing on July 7, 2021. The ALJ issued an order denying benefits dated August 10, 2021. (R. 13-37). On February 24, 2022, the Appeals Council denied the plaintiff's request for review, which rendered the ALJ's decision the final decision of the Commissioner. (R. 1-6). The plaintiff filed a timely appeal. (*See* Doc. 2). Accordingly, the Court has jurisdiction to review the ALJ's August 10, 2021, decision under 42 U.S.C. § 405(g).

### III.   The ALJ's Decision

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled and, therefore, entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). A finding that the claimant is disabled or is not disabled at any step ends the analysis. *See id.*; *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Williams v. Bowen*,

---

[1]   The issues raised to the Appeals Council and on remand are discussed in detail *infra*.

3

844 F.2d 748, 751 (10th Cir. 1988)). The claimant bears the burden on steps one through four. *Lax*, 489 F.3d at 1084.

At step one, the claimant must demonstrate that she is not engaged in any substantial gainful activity. *See Lax*, 489 F.3d at 1084. Here, the ALJ determined that the plaintiff did not engage in substantial gainful activity from her alleged onset date of September 12, 2018. (R. 17).

At step two, the claimant must establish an impairment or combination of impairments that is severe. *See Lax*, 489 F.3d at 1084. Here, the ALJ found that the plaintiff has severe impairments of major depressive disorder, PTSD, cocaine use disorder, and obesity. (R. 18). The ALJ found the plaintiff's arthritis is a non-severe medically determinable impairment. The decision noted that, despite alleged blindness/low vision, the plaintiff's decreased visual acuity is non-severe. *Id*. A consultative physical examination with Gloria Perez, D.O. on May 18, 2019 showed decreased visual acuity, but Dr. Perez "recorded only uncorrected visual acuity" limitations, and those limitations did not support additional restrictions in the RFC. *Id*. The ALJ further noted the plaintiff's complaint of "body aches, not being able to walk, and seeing things," but found these are "symptoms of her impairments" and did not warrant further restrictions in the RFC. *Id*.

The ALJ also found that fibromyalgia "is not a medically determinable impairment in this case." *Id*. The decision noted the criteria for finding fibromyalgia under SSR 12-2p and found they were not met, noting that

> Dr. Perez on May 18, 2019 assessed the [plaintiff] with chronic pain, consistent with fibromyalgia. Dr. Perez's examination showed generalized tenderness. However, the range of motion chart did not document pain with

4

> respect to joint findings, and there were no spasms or other abnormal findings (Exhibit 4F). Dr. Carroll, as above, also recorded findings of diffuse paraspinal tenderness/tension, but the claimant described her pain as localized to the back and the knees (Exhibit 7F, page 7). In July 2019, Scott Russell, D.O.'s assessment was arthritis (Exhibit 6F, page 30). Dr. Perez's tender point findings (14/18) were written in. She further gave no evidence of the distribution of the findings (See Exhibit 4F). There is no testing in the case record, which excludes arthritis as a cause of the [plaintiff's] body pain, and the record shows assessments of both arthritis and fibromyalgia associated with subjective complaints of pain.

(R. 18-19).

At step three, the ALJ determines whether the claimant's severe impairment or impairments is equivalent to one that is listed in Appendix 1 of the regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams*, 844 F.2d at 751 (internal quotation and citation omitted); *see* 20 C.F.R. §§ 404.1520(d); 20 C.F.R. Part 404, subpt. P, app'x 1 (Listings).

Here, the ALJ found that the plaintiff's impairments do not meet or equal the criteria for any Listing, specifically noting Listings 12.04 (depressive, bipolar, and related disorders), and 12.15 (trauma and stressor-related disorders). The ALJ found that the plaintiff has a moderate limitation in each of the four paragraph B domains: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 19-21). Because the plaintiff does not have at least one extreme or two or more marked limitations, her mental impairments do not meet or medically equal the criteria of the Listings. (R. 21). The ALJ also found that the plaintiff's obesity "does not increase the severity of the coexisting or

related impairment(s) to the extent that the combination of impairments meets a listing." (R. 19).

At step four, the claimant must show that her impairment or combination of impairments prevents her from performing work she has performed in the past. The ALJ first determines the claimant's residual functional capacity (RFC) based on all the relevant medical and other evidence. 20 C.F.R. § 404.1520(e); *see also Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). The ALJ next determines the physical and mental demands of the claimant's past relevant work. *Winfrey*, 92 F.3d at 1023 (citing 20 C.F.R. § 404.1520(e)). Finally, the ALJ determines whether the RFC from phase one allows the claimant to meet the job demands found in phase two. *Id.*

> Here, the ALJ determined that the plaintiff has the RFC
>
> to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c), except with the following limitations: Understand, remember, and carry out simple tasks with simple instructions in a routine work setting ([Specific Vocational Preparation (SVP) Level] 1-2). She may have occasional interaction with coworkers and supervisors, but no interaction with the general public (contact okay). She will be unable to perform tandem or teamwork. She may have occasional changes in work processes. She will miss work no more than 1 day a month. She will be off task five percent of the workday.

(R. 21-22).

In setting forth her vocational findings at step four, the ALJ relied largely on testimony given by the plaintiff and by vocational expert (VE) Lisa Cox at the initial, pre-remand hearing in this case. (*See* R. 28-29). The ALJ explained that she had "read into the hearing proceeding the vocational testimony given by Ms. Cox at the initial hearing on April 21, 2020 in this case," including Ms. Cox's classification of the plaintiff's past work.

6

(R. 29). The ALJ's decision noted that the plaintiff's counsel, Paul McTighe, "objected to the reading of the transcript instead of obtaining [VE] testimony," arguing that it was contrary to the Appeals Council's remand order to obtain supplemental evidence from a VE. (*Id.*; *see* R. 230-231). The ALJ stated that she

> interpreted the Order of Appeals Council to allow Mr. McTighe the opportunity to question/cross-examine Ms. Cox to resolve this issue, which was the basis for the remand by the Appeals Council in this case. Mr. McTighe's questioning would develop supplemental evidence from the vocational expert, but as indicated above, Mr. McTighe continually argued and objected. Despite complete latitude given, he refused to question Ms. Cox with respect to a hypothetical that he felt reflected the [plaintiff's] limitations.

(R. 29).

The ALJ stated that she "had no additional questions for Ms. Cox regarding the vocational evidence given," and that she had "taken Notice of Ms. Cox's testimony from the April 21, 2020 hearing and . . . allowed development of the testimony through the opportunity for cross-examination given the [plaintiff] and Mr. McTighe." *Id*. The ALJ concluded that Ms. Cox's testimony "is consistent with the information contained in the [DOT]," and thus she "accept[ed]" Ms. Cox's prior testimony. *Id*. The ALJ further cited her own initial written decision in relating the plaintiff's testimony about the exertional demands of her prior work. *Id*.

The ALJ found that the plaintiff is capable of performing her past relevant work as a Production Assembler, DOT # 706.687-010. (R. 28). The ALJ found this past work is unskilled, with a Specific Vocational Preparation (SVP) level of 2, is classified as light

exertion, and was performed at the light exertion level. *Id*. Thus, the ALJ found the plaintiff is not disabled at step four.

Additionally, the ALJ found in the alternative, at step five, that there are other jobs that exist in significant numbers that the plaintiff can perform, including

> Janitor, DOT Code 381.687-018, unskilled work (SVP of 2), medium exertion, 150,000 in the nation; Laundry worker I, DOT Code 361.684-014, unskilled work (SVP of 2), medium exertion, 70,000 in the nation; Stores laborer, DOT Code 922.687-058, unskilled work (SVP of 2), medium exertion, 125,000 in the nation.

(R. 30). The ALJ again relied on the VE's April 21, 2020 hearing testimony to support the latter findings. She noted that the VE's testimony in this regard is inconsistent with information in the DOT, but found that "there is a reasonable explanation for the discrepancy," because the DOT and the Selected Characteristics of Occupations "do not address frequency of interaction with others, tandem or teamwork, occasional changes in work processes, off-task behavior, or absences." (R. 31). However, she accepted Ms. Cox's testimony based on her experience that the RFC determination was not work-preclusive and not inconsistent with the plaintiff's past relevant work or alternative jobs identified at step five. *Id*.

**IV.    Discussion**

Three ALJ hearings have been held in this case. As set forth in the Appeals Council's remand order,

> [a]t the first hearing held on April 21, 2020, the [ALJ] informed the representative during his questioning of the [plaintiff] that they had already passed their allotted time for the hearing. The Administrative Law Judge added that they still needed testimony from the vocational expert, and she indicated that she would schedule a supplemental hearing if needed (Hearing

8

> Recording, 11:09:08 a.m.). The [ALJ] took vocational testimony from Ms. Cox. The [ALJ] then asked the claimant's representative whether he had "any questions for Ms. Cox." Aware that the [ALJ] wished to end the hearing quickly, and having been offered a supplemental hearing to finish questioning the claimant and Ms. Cox, the claimant's representative replied "no, not at this time" (Hearing Recording, 11:15:40 a.m. – 11:16:03 a.m.).
>
> The [ALJ] held a supplemental hearing on July 16, 2020. However, a different vocational expert attended the supplemental hearing, making it impossible for the claimant's representative to cross-examine Ms. Cox. The Administrative Law Judge nonetheless relied on Ms. Cox's testimony, including her explanation of the basis for her testimony to the extent that it is inconsistent with the information contained in the [DOT].

(R. 230-231). The Appeals Council found that the ALJ "denied the [plaintiff's] representative the opportunity to cross-examine vocational expert Lisa Cox." (R. 230). It concluded that "[t]he availability of a different vocational expert at a supplemental hearing is not a substitute for the right to cross examine the vocational expert who provided the operative testimony in this case." (R. 231).

> The Appeals Council directed the ALJ on remand to
>
> [o]btain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

(R. 231).

The plaintiff's brief challenges the ALJ's denial of benefits on two grounds: (1) the ALJ failed to cite substantial evidence supporting the RFC determination; and (2) the ALJ "failed to develop and/or follow vocational expert witness testimony." (Doc. 13 at 4). However, as the Commissioner's response brief recognizes, the plaintiff's arguments in fact encompass a wide range of alleged errors. Although confusingly organized, the plaintiff's brief asserts that the ALJ ignored medical evidence of the severity of plaintiff's mental conditions in reaching the RFC determination; failed to develop an adequate record by denying her request for a psychological consultative examination following the third hearing; and denied administrative due process. (*See id*. at 3). The plaintiff further argues that substantial evidence does not support the physical RFC determination for medium-exertion work. (*Id*. at 5).

The Commissioner's response brief addresses the plaintiff's arguments in turn, arguing that substantial evidence supports the ALJ's physical and mental RFC determination and that the ALJ fully and fairly developed the record as to the plaintiff's mental impairments.

The discussion below first addresses the plaintiff's argument that the ALJ failed to develop an adequate record as to her mental impairments. Because the Court finds this issue is dispositive and requires the case be remanded, other issues raised in the plaintiff's brief are addressed only to the extent they are relevant to the proceedings on remand.

    A.    **The ALJ Failed to Develop an Adequate Record.**

The plaintiff argues that the ALJ erred, both by refusing to order a consultative psychological examination, and by continuing to limit the plaintiff's ability to develop the

10

evidence during the hearing. It is the ALJ's responsibility to ensure that "an adequate record is developed during the disability hearing consistent with the issues raised." *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004)). As explained by the Tenth Circuit, "after the claimant satisfies her burden to show a reasonable possibility of a severe impairment, the ALJ bears responsibility to order a consultative examination if it is necessary to resolve the impairment issue." *Harlan v. Astrue*, 510 Fed. App'x 708, 713, 2013 WL 470489 at *4 (10th Cir. 2013); *see Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997) (once the claimant has presented evidence suggestive of a severe impairment, it "becomes the responsibility of the ALJ to order a consultative evaluation if such an examination is necessary or helpful to resolve the issue of impairment.").

Here, the plaintiff's counsel sought to develop the record as to the plaintiff's mental impairments through a consultative examination. During the third hearing, in July 2021, the plaintiff's counsel argued that the plaintiff

> needs a psychological evaluation. There has not been one in this case. Even a neuropsychological evaluation would be appropriate. She's complained of various serious, serious symptoms of suicidal ideation. The record shows that she actually was hospitalized several times for that . . . . She continues to complain about the . . . auditory as well as visual hallucinations.

(R. 132).

The ALJ denied this request. In her decision, the ALJ explained:

> Mr. McTighe noted that the claimant receives mental health treatment at Family and Children's Services (FCS). He indicated they provide very good care, but he did not think they ever do testing or give an opinion. Mr. McTighe expressed mistrust of the statements of the State agency reviewing doctors.

> In this case, given the ongoing mental health treatment at FCS, the record is not lacking evidence. Further, as FCS is the primary source of mental health treatment, there does not appear a conflict, inconsistency, or ambiguity in the record. The undersigned does not find a psychological consultative examination appropriate or warranted. The State agency physicians reviewed the treating source evidence, and the complete longitudinal evidence is sufficient to support the findings in this decision without additional examination or testing. The undersigned denies request for psychological consultative examination and testing. *See* 20 CFR 404.1519a, 416.919a.

(R. 15).

It is well-settled that an ALJ has broad latitude in deciding whether to order a consultative examination. *Hawkins*, 113 F.3d at 1166 (citing *Diaz v. Sec'y of Health & Hum. Servs.*, 898 F.2d 774, 778 (10th Cir. 1990). Where there is inconsistency in the medical evidence requiring resolution, or where the medical evidence in the record is insufficient to allow the ALJ to make a determination on the claim, a consultative examination may be required. 20 C.F.R. § 416.919a(b). An ALJ may also purchase a consultative examination to secure "the additional evidence needed [that] is not contained in the records of your medical sources." *Id*. § 416.919a(b)(1).

The plaintiff testified to experiencing auditory and visual hallucinations, as well as to having suicidal thoughts two or three times per week. (R. 120). She testified that she seldom leaves her home and relies on family for help with shopping. (R. 121). During inpatient rehabilitative treatment in December 2018 and January 2019, the plaintiff was assessed with a Global Assessment of Functioning (GAF) score of 38 (a level associated with "[s]ome impairment in reality testing or communication . . . OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," according to the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition).

The plaintiff has participated in group rehabilitation and group and individual therapy, but thereafter became noncompliant. (R. 24). She then "left treatment against clinical advice after developing peer and behavioral conflict." *Id*. Subsequently, she received medication management through FCS. She reported panic attacks, symptoms of depression, psychosis, and paranoia, and stated that she turned to drug abuse to cope with a history of sexual abuse and PTSD. *Id*.

The ALJ found no further restrictions are needed in the plaintiff's RFC, noting occasions when the plaintiff appeared fully oriented, presented with a normal appearance, made eye contact, and had a goal-directed and logical thought process. (R. 25). However, on some of the same occasions, the plaintiff "appeared to hallucinate" and demonstrated a "constricted affect" and "passive suicidal ideation." *Id*. While the plaintiff participated in counseling, "[s]ymptoms of depression, anxiety and perceptual disturbance [were] ongoing." *Id*.

The plaintiff reported that she continued to make progress in her treatment objectives at FCS through February 2020. *Id*. However, the record "establishes ongoing issues with low mood, hopelessness, and psychosis, as well as difficulty with activities of daily living such as sleep and finances, which caused stress, even though the [plaintiff] abstained from illicit substances and she was compliant with medications." (R. 26). As of April 2021, the plaintiff reported no use of alcohol or illicit substances and indicated that her cocaine use disorder "remained in sustained remission." *Id*. Nonetheless, she "described command hallucinations that tell her to harm herself," which she coped with by using a prayer closet. *Id*.

In short, it is clear from the ALJ's decision that the evidence regarding the plaintiff's mental condition is far from consistent. While the ALJ's decision recited portions of the record reflecting the plaintiff's ongoing symptoms and treatment progress, the record includes no medical opinion as to how the plaintiff's mental impairments affect her functioning as it relates to the ability to work. The only consultative examination on the record, resulting from an internal medicine examination by Dr. Perez, assessed diagnoses including bipolar and major depressive disorder, anxiety, PTSD, visual and auditory hallucinations, and decreased memory recall. The plaintiff's attorney asserted that the plaintiff cannot afford to get psychological testing. (R. 135).

"The ALJ's decision should have been evaluated based solely on the reasons stated in the decision." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004); *see also Knipe v. Heckler*, 755 F.3d 141, 149 n.16 (10th Cir. 1985) (holding that an ALJ's decision cannot be affirmed on the basis of appellate counsel's post hoc rationalizations for agency action). District courts "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2004)

Here, the ALJ's narrative reciting the findings of plaintiff's providers clearly contradicts the ALJ's stated reasons for denying the request for a psychological consultative examination—i.e., a purported lack of "conflict, inconsistency or ambiguity in the record." (R. 15). Moreover, the ALJ did not substantively refute the plaintiff's assertion that the FCS records did not include testing or opinion evidence—rather, the ALJ simply concluded that "the record is not lacking evidence." *Id*. As such, the ALJ's decision

14

failed to provide adequate reasons for finding the evidence was sufficient to support the RFC determination. Instead, the ALJ's decision resembles the type of "conclusion in the guise of findings" that is prohibited. *Wilson v. Astrue,* 602 F.3d 1136, 1144 (10th Cir. 2010) (citing *Diaz v. Sec'y of Health & Hum. Servs.,* 898 F.2d 774, 777 (10th Cir. 1990)).

Accordingly, the ALJ did not adequately "resolve the impairment issue." *Harlan*, 510 F. App'x at 713. A psychological consultative examination would be helpful in resolving whether the plaintiff's mental impairments have an impact on her functioning and thus are disabling. *See Hawkins*, 113 F.3d at 1166. Remand is warranted for further development of the record, including a consultative examination, to clarify the severity of the plaintiff's mental impairments and their effect on her ability to perform work.

### B. On Remand, the ALJ Should Review the Record as to Plaintiff's Physical RFC De Novo.

The plaintiff contends that the ALJ's finding that the plaintiff is capable of medium-exertion work is not reasonable. The plaintiff points to her allegations and medical evidence of fibromyalgia-like pain and tingling in the extremities, and argues these symptoms preclude medium work, which entails, inter alia, lifting up to 50 pounds for up to 1/3 of a workday ("occasionally"). However, the plaintiff's brief does not develop this argument sufficiently for the Court to identify any reversible error as to the physical RFC determination.

The plaintiff suggests that Dr. Perez's May 18, 2019 internal consultative examination did not include any specialized testing of the plaintiff's capacity to lift objects, and Dr. Perez assessed diagnoses including chronic pain consistent with fibromyalgia,

finding tenderness in 14 of 18 fibromyalgia trigger points. Nonetheless, the plaintiff does not argue that the ALJ had a duty to further develop the medical record as to plaintiff's physical impairments. Nor does she develop an argument that the ALJ failed to properly consider her subjective statements regarding pain and other limitations. The Commissioner argues that any such argument is therefore waived.

The Commissioner also contends that substantial evidence supports the ALJ's physical RFC findings.[2] For instance, she characterizes clinical findings in the record as "minor abnormalities." (Doc. 18 at 6). The Commissioner further argues that the ALJ's physical RFC findings are supported by evidence of conservative treatment for the plaintiff's physical symptoms, and the absence of evidence that the plaintiff sought regular treatment for her fibromyalgia or other physical impairments. (*See id.*). However, these post-hoc rationalizations do not lend support to the ALJ's decision.

The Court notes that the plaintiff complained of back pain, tingling of the extremities, and knee pain following a car accident in 2019. The plaintiff also testified in July 2021 that she "ha[dn't] been able to lift 50 pounds for years. I can't." (R. 118; *see also* R. 47 (noting that in past work the plaintiff "could just only lift like five to ten pounds which it wasn't heavy.")). During the third ALJ hearing in 2021, the plaintiff also stated that her condition had gotten "worse," in that her "body . . . just seems like everything has failed." (R. 111). She further testified that due to tingling in her extremities, she had

---

[2] The defendant further contends that any error by the ALJ in assessing an RFC for medium-exertion work is harmless, because the plaintiff's past relevant work as a Production Assembler is classified as light work.

difficulty holding things such as pots, and that due to tingling in her feet, she "can hardly . . . walk sometimes." (R. 122). However, she stated that she had been unable to seek medical care because she did not have insurance or income. *Id*.

Accordingly, while the plaintiff has not established a reversible error as to the physical RFC determination, the Court finds that the record warrants a de novo consideration of the evidence relating to her physical impairments. On remand, the ALJ should review the record de novo as to both the plaintiff's physical and mental impairments, and the ALJ's earlier findings in this case should not be relied upon in supporting a subsequent finding of non-disability.

### V. Conclusion

For the reasons set forth above, the Court finds the ALJ did not adequately develop the record in relation to the plaintiff's mental impairments. On remand, the ALJ should be directed to develop the record, including by ordering a mental consultative examination of the plaintiff, and to conduct a de novo review of the record as a whole. Therefore, the decision of the Commissioner finding the plaintiff not disabled for the relevant period is **reversed and remanded** for further proceedings consistent with this opinion.

**SO ORDERED** this 27th day of September, 2023.

*Christine D. Little*
Christine D. Little
United States Magistrate Judge